```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                    15-14059-CR-MARTINEZ/GOODMAN


UNITED STATES OF AMERICA,     )
                              )
            PLAINTIFF,        )
                              )
      VS.                     )
                              )
JEFFREY BRIAN MOBLEY,         )
                              )
            DEFENDANT.        )
_____)

            (TRANSCRIPT BY DIGITAL RECORDING)


        TRANSCRIPT OF PRETRIAL DETENTION HEARING HAD BEFORE
THE HONORABLE FRANK J. LYNCH, JR., IN FORT PIERCE, SAINT LUCIE
COUNTY, FLORIDA, ON OCTOBER 29, 2015, IN THE ABOVE-STYLED
MATTER.


APPEARANCES:

FOR THE GOVERNMENT:  CARMEN M. LINEBERGER, A.U.S.A.
                     101 SOUTH U.S. HWY 1, SUITE 3100
                     FORT PIERCE, FL 34950 - 772 293-0944

FOR THE DEFENDANT:   PANAYOTTA AUGUSTIN-BIRCH, A.F.P.D.
                     109 NORTH SECOND STREET
                     FORT PIERCE, FL 34950 - 772 489-2123


              CARL SCHANZLEH, RPR - CM
              CERTIFIED COURT REPORTER
                 9960 SW 4TH STREET
              PLANTATION, FLORIDA 33324
                   954 424-6723
```

1

2                      TABLE OF CONTENTS

3  WITNESSES:                     DIRECT   CROSS  REDIRECT  RECROSS

4  JASON RICHARDS ............................  8       13

5                      INDEX TO EXHIBITS

6  EXHIBITS                      MARKED FOR          RECEIVED
                                 IDENTIFICATION      IN EVIDENCE
7
   DESCRIPTION                    PAGE     LINE     PAGE     LINE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   (FORT PIERCE, SAINT LUCIE COUNTY, FLORIDA;  OCTOBER 29, 2015,
 2   IN OPEN COURT.)
 3           THE COURT:  THE NEXT MATTER IS A DETENTION HEARING,
 4   UNITED STATES VERSUS JEFFREY BRIAN MOBLEY,
 5   15-14059-CR-MARTINEZ.
 6           MS. LINEBERGER:  GOOD MORNING, YOUR HONOR.  CARMEN
 7   LINEBERGER ON BEHALF OF THE GOVERNMENT.
 8           THE COURT:  GOOD MORNING, MA'AM.
 9           MS. AUGUSTIN-BIRCH:  GOOD MORNING, YOUR HONOR.
10   PANAYOTTA BIRCH ON BEHALF OF JEFFREY MOBLEY AND HE IS PRESENT
11   BEFORE THE COURT.
12           THE COURT:  GOOD MORNING, MA'AM.
13           GOOD MORNING, MR. MOBLEY.
14           ARE WE READY ON THIS?
15           MS. LINEBERGER:  YES, YOUR HONOR.
16           THE COURT:  OKAY.  THERE IS AN INDICTMENT BUT THERE IS
17   ALSO A COMPLAINT.  DO YOU HAVE A COPY OF THAT COMPLAINT,
18   MISS BIRCH?  I'M SURE I ALREADY ASKED YOU THAT.
19           MS. AUGUSTIN-BIRCH:  I DO, YOUR HONOR.
20           THE COURT:  OKAY.  I'M GOING TO TAKE NOTICE OF THE
21   FACTS SET FORTH IN THE COMPLAINT TO SERVE AS THE GOVERNMENT'S
22   PROFFER.  ANY OBJECTION TO THAT?
23           MS. AUGUSTIN-BIRCH:  NO, YOUR HONOR.
24           MS. LINEBERGER:  NO OBJECTION.
25           THE COURT:  OKAY.  ANY ADDITIONAL FACTS THE GOVERNMENT
```

1  WISHES TO PROFFER.
2         MS. LINEBERGER:  YES, YOUR HONOR.
3         THE COURT:  OKAY.  GO AHEAD.
4         MS. LINEBERGER:  YOUR HONOR, A FORENSIC EXAMINATION OF
5  THE DEFENDANT'S IPHONE REVEALED VIDEOS PRODUCED ON AUGUST 4TH,
6  2015, WHICH REFERS TO COUNT ONE OF THE INDICTMENT, AND
7  SEPTEMBER 18TH OF 2015 --
8         THE COURT:  SEPTEMBER WHAT DATE?
9         MS. LINEBERGER:  I'M SORRY?
10        THE COURT:  SEPTEMBER WHAT DATE?
11        MS. LINEBERGER:  SEPTEMBER 18TH --
12        THE COURT:  OKAY.
13        MS. LINEBERGER:  -- OF 2015.
14        THESE -- AND THAT IS REFERRING TO COUNT TWO OF THE
15 INDICTMENT.  THOSE VIDEOS WERE PRODUCED BY THE DEFENDANT'S
16 IPHONE AND SHOWED IMAGES OF THE DEFENDANT AND L.U., A 15 YEAR
17 OLD MINOR HAVING VAGINAL AND ORAL INTERCOURSE AND VARIOUS
18 SEXUAL ACTIVITY.
19        FROM STILLS OF THOSE VIDEOS THE VICTIM L.U. IDENTIFIED
20 HERSELF, AND SHE STATED THAT THE DEFENDANT USED HIS IPHONE TO
21 RECORD THOSE VIDEOS WHILE THEY WERE HAVING THAT INTERCOURSE.
22        SHE INDICATED THAT THE AUGUST 4TH, 2015 VIDEO WAS
23 FILMED IN THE DEFENDANT'S STUART RESIDENCE, AND THE SEPTEMBER
24 18TH, 2015 VIDEO WAS FILMED IN THE DEFENDANT'S PICKUP TRUCK.
25        SEVERAL OTHER VIDEOS WERE FOUND IN THE GMAIL RETURNS

1  AS A RESULT OF SEARCH WARRANTS BEING EXECUTED ON THEM AND THE
2  IPHONE WAS MADE IN CHINA.
3       COUNT THREE REFERS TO WHAT ARE KNOWN AS TWEETS BETWEEN
4  THE DEFENDANT AND THE VICTIM L.U.  THE TWEETS INCLUDED PHOTOS
5  EXCHANGED BETWEEN THE TWO IN VARIOUS STAGES OF UNDRESS INCLUDED
6  SEXUALLY EXPLICIT IMAGES, AND AT LEAST TWO EXCHANGES WHERE THE
7  DEFENDANT ENCOURAGES SEXUAL ACTIVITY AND SEXUAL EXPLICIT
8  CONDUCT OF L.U. AND THEN REQUESTS PHOTOS OF SUCH SEXUAL
9  CONDUCT.  AND THE SEPTEMBER 1ST, 2015 TWEET SESSION WENT ON FOR
10 HOURS, AND A SECTION OF THAT TWEET IS INCLUDED IN THE CRIMINAL
11 COMPLAINT.
12      COUNT FOUR REFERS TO A SEPTEMBER 10TH, 2015 EXCHANGE
13 VIA TWEET BETWEEN THE DEFENDANT AND L.U.  DURING THESE TWEETS
14 L.U. STARTS OFF IN UNDERWEAR IN A MIRROR.  SHE IS SENDING
15 PHOTOS DURING THESE TWEETS.  THE TWEETS FROM THE DEFENDANT
16 REQUESTS THAT SHE SHOW MORE OF HERSELF AND SHE GRADUALLY
17 BECOMES NUDE IN THE COURSE OF THE PHOTOS.
18      HE REQUESTS THAT SHE BEND OVER AND THEN HE WANTS TO
19 SEE IT ALL, AND THEN THE VICTIM L.U. SENDS A PHOTO OF HERSELF
20 IN THE MIRROR SHOWING A VIEW OF HER GENITALS FULLY EXPOSED TO
21 THE CAMERA.  MOBLEY'S TWEETS THEN DISCUSS THE THINGS HE WANTS
22 TO DO TO HER SEXUALLY.
23      BOTH OF THE TWEETS THAT I HAVE MENTIONED ENCOURAGE AND
24 REQUESTS THE VICTIM L.U. TO CREATE CHILD PORNOGRAPHY AND
25 DISCUSS WHAT WOULD BE CHARGED AS LEWD AND LASCIVIOUS BATTERY

1  WERE IT CONSUMMATED UNDER FLORIDA STATUTE 800.04.

2           COUNT FIVE REFERS TO IMAGES FOUND AS A RESULT OF A
3  SEARCH WARRANT ON A GMAIL ACCOUNT, JACKANDLILLY2014@GMAIL.COM,
4  AND THERE ARE A NUMBER OF E-MAILS SENT FROM THE DEFENDANT'S
5  HOTMAIL ACCOUNT JFFMBLY@HOTMAIL.COM.  INCLUDED IN THOSE E-MAILS
6  IS A FEBRUARY 13, 2015 E-MAIL OF A VIDEO SHOWING THE DEFENDANT
7  AND THE VICTIM L.U. HAVING SEXUAL INTERCOURSE IN MOBLEY'S
8  STUART RESIDENCE.

9           COUNT SIX REFERS TO A JULY 5TH, 2015 E-MAIL INVOLVING
10 THOSE SAME TWO ACCOUNTS, YOUR HONOR, CONTAINING A NUMBER OF
11 STILL PHOTOS TAKEN FROM AN APPARENT SKYPE SESSION BETWEEN THE
12 DEFENDANT AND L.U. AS L.U. IS TAKING A SHOWER NUDE AND LEWDLY
13 EXPOSING HERSELF AND POSING FOR THE CAMERA WHILE THE DEFENDANT
14 WATCHES VIA SKYPE.

15          THE DEFENDANT IS SENDING FROM HIS JFFMBLY@HOTMAIL.COM
16 THOSE STILL IMAGES, AND IT'S OBVIOUS BECAUSE ONE OF THE STILLS
17 HAS THE DEFENDANT IN A SMALLER BOX ON THE SCREEN WHICH WOULD BE
18 HIS VIEW AS IT'S STREAMED TO HIS DEVICE DURING THE SESSION.

19          AT ALL TIMES INVOLVED IN THIS INDICTMENT THE VICTIM
20 WAS 15 YEARS OF AGE, THE DEFENDANT IS 24 YEARS OF AGE.

21          IN THE DEFENDANT'S IPHONE WAS WHAT APPEARED TO BE A
22 CALCULATOR FUNCTION WHICH TURNED OUT TO BE A WAY OF HIDING
23 FOLDERS OF IMAGES OF L.U.  IN THAT FOLDER WERE NUMEROUS PICTURE
24 IMAGES OF THE VICTIM NUDE, AS WELL AS VIDEOS OF SEXUAL ACTIVITY
25 BETWEEN THE DEFENDANTS AND L.U., THE MINOR VICTIM.

1 ON THE VICTIM'S CELLPHONE VIDEOS -- ADDITIONAL VIDEOS
2 WERE FOUND OF THE DEFENDANT AND L.U. ENGAGING IN SEXUALLY
3 EXPLICIT CONDUCT.
4 ALSO FOUND IN I BELIEVE THE DEFENDANT'S IPHONE OR
5 GMAIL RESULTS THERE WERE TWO VIDEOS WHICH APPEAR TO HAVE BEEN
6 SURREPTITIOUSLY TAKEN OF THE DEFENDANT'S SISTER-IN-LAW GETTING
7 OUT OF THE SHOWER. AN INVESTIGATION INDICATES THAT THAT WAS
8 FROM AN AUGUST 2015 TRIP THAT THE DEFENDANT TOOK WITH HIS
9 FAMILY -- HIS IN-LAWS TO COSTA RICA.
10 THE GOVERNMENT HAS OBTAINED A VIDEO AND RECORDS FROM
11 CLARION INN WITH THE DEFENDANT AND THE VICTIM, AS WELL AS
12 RECORDS OF THREE SEPARATE VISITS BY THE DEFENDANT TO THE
13 SUBURBAN LODGE. CLARION INN IS IN STUART, FLORIDA. THE
14 SUBURBAN LODGE IS ALSO IN STUART, FLORIDA, MARTIN COUNTY.
15 AT ALL TIMES OF THE -- WITH REGARD TO THE VIDEOS AND
16 IMAGES TAKEN OF L.U., L.U. WAS PHYSICALLY LOCATED IN MARTIN
17 COUNTY, IN THE SOUTHERN DISTRICT OF FLORIDA.
18 THANK YOU, YOUR HONOR.
19 THE COURT: OKAY. DO YOU HAVE AN AGENT PRESENT FOR
20 CROSS-EXAMINATION?
21 MS. LINEBERGER: I DO.
22 I HAVE FBI SPECIAL AGENT JASON RICHARDS AVAILABLE FOR
23 CROSS-EXAMINATION.
24 THE COURT: DO YOU WISH TO EXAMINE THE AGENT?
25 MS. AUGUSTIN-BIRCH: YES, YOUR HONOR.

```
 1              THE COURT:  OKAY.  WOULD YOU STEP FORWARD.
 2              WOULD YOU RAISE YOUR RIGHT HAND FOR ME, PLEASE?
 3              (WITNESS SWORN)
 4              THE WITNESS:  YES, SIR.
 5              THE COURT:  PLEASE HAVE A SEAT.
 6              ONCE YOU'RE SEATED STATE YOUR FULL NAME AND SPELL YOUR
 7   LAST NAME FOR THE RECORD.
 8              THE WITNESS:  JASON RICHARDS, R-I-C-H-A-R-D-S.
 9              THE COURT:  MISS BIRCH?
10              MS. AUGUSTIN-BIRCH:  THANK YOU, YOUR HONOR.
11                          JASON RICHARDS,
12   BEING DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:
13                          CROSS EXAMINATION
14   BY MS. AUGUSTIN-BIRCH:
15   Q.   GOOD MORNING, AGENT RICHARDS.
16   A.   GOOD MORNING.
17   Q.   WHEN DID YOU FIRST BECOME INVOLVED IN THIS CASE?
18   A.   IT WAS AROUND OCTOBER OF THIS YEAR.
19   Q.   AND THAT WAS AFTER THE ALLEGED VICTIM IDENTIFIED AS L.U.
20   WAS INTERVIEWED BY LAW ENFORCEMENT, IS THAT CORRECT?
21   A.   YES.
22   Q.   DURING YOUR INVESTIGATION AND WHAT YOU HAVE LEARNED IN THIS
23   CASE HOW MANY ALLEGED VICTIMS ARE THERE?
24   A.   AT THIS POINT TWO.
25   Q.   AND THEY HAVE BEEN IDENTIFIED AS L.U. AND K.M.?
```

1  A.   YES.

2  Q.   AND LAW ENFORCEMENT FOUND OUT ABOUT L.U. THROUGH HER MOTHER

3  WHO WAS IDENTIFIED AS C.U. IN THE COMPLAINT, IS THAT CORRECT?

4  A.   CORRECT.

5  Q.   AND C.U. REPORTED TO LAW ENFORCEMENT THAT SHE WAS

6  SUSPICIOUS REGARDING THE RELATIONSHIP BETWEEN HER DAUGHTER AND

7  MR. MOBLEY.

8  A.   YES.

9  Q.   WHEN L.U. WAS INTERVIEWED BY LAW ENFORCEMENT WAS THAT

10 RECORDED?

11 A.   YES.

12 Q.   THE ENTIRE STATEMENT?

13 A.   YES.

14 Q.   HAS LAW ENFORCEMENT IDENTIFIED A TIME PERIOD THAT THOSE

15 ALLEGATIONS INVOLVED MR. MOBLEY WITH L.U.?

16 A.   IT WAS BETWEEN 2014 AND 2015.  I BELIEVE SHE FIRST MET HIM

17 AROUND FEBRUARY OF 2014.

18 Q.   AND THAT WAS THROUGH GRACE PLACE CHURCH IN STUART.

19 A.   YES.

20 Q.   AND REGARDING K.M., DID LAW ENFORCEMENT LEARN THAT K.M. --

21 THAT MR. MOBLEY THROUGH THE SAME CHURCH?

22 A.   YES.

23 Q.   BASED ON THE INVESTIGATION DID LAW ENFORCEMENT FIND OUT

24 WHETHER ANY OF THESE VIDEOS WERE ALLEGEDLY SENT TO ANYONE ELSE

25 ASIDE FROM L.U. AND MR. MOBLEY?

1  A. WE HAVE NO EVIDENCE OF THAT.
2  Q. HOW DID K.M. COME TO LAW ENFORCEMENT'S ATTENTION?
3  A. SHE CAME IN TO THE MARTIN COUNTY SHERIFF'S OFFICE.
4  Q. AND THAT WAS AFTER L.U. WAS INTERVIEWED.
5  A. NO.
6  Q. NO. SHE CAME IN FIRST?
7      DO YOU NEED ME TO REPEAT MY QUESTION?
8  A. YES. I WANT TO MAKE SURE I'M ON THE SAME PAGE AS YOU ARE.
9  Q. WHEN DID K.M. FIRST COME TO THE MARTIN COUNTY SHERIFF'S
10 OFFICE, WAS IT PRIOR TO L.U. COMING OR AFTER?
11 A. NO. THAT WAS AFTER. I APOLOGIZE. I THOUGHT YOU MEANT
12 C.U. SORRY.
13 Q. THAT'S OKAY. K.M. WAS INTERVIEWED AS WELL?
14 A. YES.
15 Q. AND WAS THAT RECORDED?
16 A. YES.
17 Q. THE ENTIRE STATEMENT?
18 A. YES.
19 Q. AT THE TIME OF THE INTERVIEW K.M. WAS 18 YEARS OLD,
20 CORRECT?
21 A. YES.
22 Q. AND WHAT TIME PERIOD DID SHE GIVE TO LAW ENFORCEMENT THAT
23 SHE WAS ALLEGEDLY HAVING SEX WITH MR. MOBLEY?
24 A. I DON'T RECALL THAT.
25 Q. DO YOU KNOW WHAT AGE SHE WAS?

1  A.  SEVENTEEN.

2  Q.  HAS LAW ENFORCEMENT LEARNED WHETHER OR NOT THE SEXUAL

3  ACTIVITY THAT ALLEGEDLY OCCURRED WAS RECORDED BETWEEN K.M. AND

4  MR. MOBLEY?

5  A.  HER STATEMENT WAS THAT IT WAS.

6  Q.  HAS LAW ENFORCEMENT RECOVERED ANY VIDEOS DURING THE

7  FORENSIC EXAMINATION OF THE IPHONE, OR THE COMPUTER, OR ANY

8  OTHER COMPUTER RELATED ITEMS THAT WERE RECOVERED IN THE SEARCH

9  WARRANT?

10 A.  NO.  THE FORENSICS ARE STILL ONGOING, BUT NOT TO DATE.

11 Q.  DURING THE INVESTIGATION DID LAW ENFORCEMENT LEARN THAT THE

12 SEXUAL ACTIVITY THAT ALLEGEDLY OCCURRED WAS CONSENSUAL BETWEEN

13 K.M. AND L.U.?

14 A.  YES.

15 Q.  DID LAW ENFORCEMENT LEARN ANY INFORMATION THAT MR. MOBLEY

16 EVER USED ANY THREATS OR ANY VIOLENCE REGARDING L. -- I'M

17 SORRY.  K.M. OR L.U.

18 A.  NO.

19 Q.  MR. MOBLEY WAS ARRESTED ON OCTOBER 5TH OF THIS YEAR,

20 CORRECT?

21 A.  CORRECT.

22 Q.  AND THAT WAS IN OCALA?

23 A.  YES.

24 Q.  AND HE WAS ARRESTED AT A GAS STATION CLOSE TO WHERE HE WAS

25 RESIDING?

1  A.  YES.  HE WAS FOLLOWED FROM HIS RESIDENCE TO THE GAS
2  STATION.
3  Q.  AND AT SOME POINT HE WAS TAKEN BACK TO HIS HOME?
4  A.  YES.
5  Q.  AND HE GAVE A STATEMENT I BELIEVE TO DETECTIVE BROUGHTON?
6  A.  YES.
7  Q.  WERE YOU PRESENT FOR THE STATEMENT?
8  A.  NO.
9  Q.  HAVE YOU HAD THE OPPORTUNITY TO REVIEW THAT STATEMENT?
10 A.  NO.
11 Q.  DO YOU KNOW WHETHER MR. MOBLEY WAS READ MIRANDA?
12 A.  YES, HE WAS.
13 Q.  DO YOU KNOW IF HE EXECUTED A MIRANDA FORM?
14 A.  I DON'T BELIEVE SO.
15 Q.  DO YOU KNOW IF THE INTERVIEW WAS RECORDED?
16 A.  IT WAS.
17 Q.  WAS IT RECORDED IN ITS ENTIRETY?
18 A.  YES.
19 Q.  AT ANY POINT DID MR. MOBLEY ASK FOR AN ATTORNEY?
20 A.  NO.
21 Q.  AND THERE WAS A SEARCH WARRANT THAT WAS ALSO EXECUTED AT
22 HIS HOME ON THAT DAY.
23 A.  YES.
24 Q.  AND I BELIEVE ASIDE FROM HIS CELLPHONE, IPADS, AND
25 COMPUTERS AND LAPTOPS WERE RECOVERED?

1  A. AH-HUH.

2  Q. THAT'S A YES?

3  A. (INAUDIBLE)

4  Q. DURING THE FORENSIC EXAMINATION OF ALL THE COMPUTER RELATED

5  ITEMS, WAS THERE ANY CHILD PORNOGRAPHY THAT WAS RECOVERED FROM

6  ANY OF THOSE ITEMS?

7  A. FROM --

8  Q. ASIDE FROM THE ALLEGATIONS REGARDING L.U. AND K.M.

9  A. NO.

10 Q. DID THE INVESTIGATION REVEAL THAT MR. MOBLEY WAS VISITING

11 ANY TYPES OF CHILD PORNOGRAPHY RELATED WEBSITES?

12 A. NO.

13            MS. AUGUSTIN-BIRCH:  MAY I HAVE A MOMENT, YOUR HONOR?

14            THE COURT:  YES, MA'AM.  TAKE YOUR TIME.

15            MS. AUGUSTIN-BIRCH:  I HAVE NOTHING FURTHER, YOUR

16 HONOR.

17            THE COURT:  OKAY.  MISS LINEBERGER, ANYTHING ON THAT?

18                   REDIRECT EXAMINATION

19 BY MS. LINEBERGER:

20 Q. WERE YOU ABLE TO CONDUCT A SEARCH OF HIS TRUCK?

21 A. NO.

22            MS. LINEBERGER:  NO FURTHER QUESTIONS.

23            THE COURT:  OKAY.  THANK YOU, SIR.

24            YOU CAN STEP DOWN.

25            THE WITNESS:  THANK YOU.

```
 1              THE COURT:  YES, SIR.
 2              MISS BIRCH, ANY WITNESSES OR EVIDENCE FOR THE
 3  DEFENDANT?
 4              MS. AUGUSTIN-BIRCH:  YES, YOUR HONOR.
 5              THE COURT:  OKAY.
 6              MS. AUGUSTIN-BIRCH:  I DO HAVE TESTIMONY THAT I WOULD
 7  LIKE TO PROFFER.
 8              THE COURT:  YES, MA'AM.
 9              MS. AUGUSTIN-BIRCH:  MR. MOBLEY'S FAMILY IS PRESENT IN
10  COURT TODAY, YOUR HONOR.  HIS FATHER JERRY MOBLEY IS PRESENT
11  WITH HIS WIFE WHO IS MR. MOBLEY'S STEP-MOTHER.
12              MR. MOBLEY'S MOTHER IS ALSO PRESENT WITH HER HUSBAND,
13  MR. MOBLEY'S STEPFATHER.  AND MR. MOBLEY'S MOTHER IS
14  MRS. THOMPSON MCDANIEL.  AND BOTH OF HIS PARENTS, MR. JERRY
15  MOBLEY AND MRS. THOMPSON MCDANIEL ARE WILLING TO CO-SIGN A BOND
16  FOR THEIR SON.
17              ALSO, YOUR HONOR, CAN I JUST GO INTO THE ARGUMENT AS
18  WELL?
19              THE COURT:  YES, MA'AM.
20              MS. AUGUSTIN-BIRCH:  MR. MOBLEY, AS STATED IN THE
21  PRETRIAL SERVICES REPORT, IS FROM OHIO.  HOWEVER, HE HAS BEEN
22  RESIDING IN FLORIDA SINCE I BELIEVE 2013.  AND I JUST HAVE A
23  SLIGHT CHANGE FOR THE PRETRIAL SERVICES REPORT --
24              THE COURT:  YES, MA'AM.
25              MS. AUGUSTIN-BIRCH:  -- REGARDING HIS UNEMPLOYMENT.
```

1       MR. MOBLEY HAS BEEN UNEMPLOYED.  AND THE REASON IS
2  HE'S BEEN RENOVATING AND REMODELING THE HOME THAT HE OWNS WITH
3  HIS WIFE --
4       THE COURT:  RIGHT.
5       MS. AUGUSTIN-BIRCH:  -- IN OCALA, FLORIDA, TO PREPARE
6  TO BE SOLD.  SO I JUST WANTED -- I KNOW THERE IS SOME
7  INFORMATION ABOUT THAT IN THE PRETRIAL SERVICES REPORT.  BUT I
8  WANTED TO BE SURE THAT THE COURT UNDERSTOOD WHY HE WAS -- HE
9  HAS NOT BEEN WORKING SINCE JANUARY OF THIS YEAR.
10      THE COURT:  RIGHT.  I THINK HE SAID THAT AT THE
11 INITIAL APPEARANCE BEFORE ME AS WELL.  I LOOKED BACK AT MY
12 NOTES, BUT THAT'S MY RECOLLECTION.
13      MS. AUGUSTIN-BIRCH:  OKAY.
14      THE COURT:  OKAY.
15      MS. AUGUSTIN-BIRCH:  HE WAS RESIDING IN STUART SINCE
16 AUGUST OF 2013 UNTIL DECEMBER OF 2014 WHEN HE GOT MARRIED AND
17 RELOCATED TO OCALA.
18      IF RELEASED ON A BOND, YOUR HONOR, MR. MOBLEY WILL BE
19 RESIDING AT HIS HOME WITH HIS WIFE AT THE ADDRESS LISTED IN THE
20 PRETRIAL SERVICES REPORT ON 8TH STREET IN OCALA.
21      THE HOME WAS PURCHASED IN JANUARY OF THIS YEAR AS A
22 FORECLOSED HOME, AND THAT'S THE REASON WHY MR. MOBLEY IS
23 REMODELING THAT HOME SO THAT IT CAN BE SOLD.  I'M NOT SURE WHAT
24 THE VALUE OF THE HOME IS, BUT HE DOES OWN A HOME WITH HIS WIFE.
25      HE ALSO OWNS ANOTHER HOME IN STUART THAT IS CURRENTLY

1  BEING RENTED.  IT WAS PURCHASED IN NOVEMBER OF 2013 FOR
2  APPROXIMATELY $81,000, AND THERE IS ABOUT $6,000 IN EQUITY IN
3  THAT HOME.
4       HIS PARENTS ALL RESIDE IN OHIO.  HOWEVER, I WOULD
5  POINT OUT TO THE COURT THAT HIS FATHER, MR. JERRY MOBLEY HAS
6  OFFERED AND IS WILLING TO RELOCATE TO OCALA, FLORIDA, AND ACT
7  AS A THIRD PARTY CUSTODIAN FOR HIS SON.  HIS FATHER HAS AGREED
8  TO RELOCATE TO OCALA WITH HIS WIFE AND THREE CHILDREN AND ACT
9  AS A THIRD PARTY CUSTODIAN.
10      HIS MOTHER, MRS. THOMPSON MCDANIEL, HAS ALSO AGREED TO
11 COME TO FLORIDA AT TIMES SO THAT SHE CAN ALSO BE A CUSTODIAN
12 FOR HER SON.
13      I WILL ALSO POINT OUT TO THE COURT THAT MR. MOBLEY'S
14 FATHER HAS BEEN DIAGNOSED WITH A FORM OF LEUKEMIA, AND THAT IS
15 ONE OF THE MOTIVATIONS THAT HE HAS TO COME TO OCALA TO BE ABLE
16 TO SPEND SOME TIME WITH HIS SON.
17      IN LOOKING AT THE DANGER TO THE COMMUNITY COMPONENT.
18 MR. MOBLEY HAS NO CRIMINAL HISTORY.  BASED ON THE ALLEGATIONS
19 THAT WE HAVE HEARD IN COURT TODAY IT REFERS TO TWO VICTIMS, AND
20 BOTH OF THESE VICTIMS -- ALLEGED VICTIMS WERE ENCOUNTERED BY
21 MR. MOBLEY AT GRACE PLACE WHERE HE WAS PREVIOUSLY WORKING.
22      I WOULD POINT OUT TO THE COURT THAT ALL OF THE
23 ALLEGATIONS STEM FROM GRACE PLACE, IT WAS IN STUART, FLORIDA,
24 AND THAT IF THE COURT AGREES TO RELEASE HIM ON A BOND HE'LL BE
25 RESIDING OCALA, WHICH IS HOURS AWAY FROM STUART.

1       THERE IS NO EVIDENCE THAT MR. MOBLEY WAS VISITING ANY

2   CHILD PORNOGRAPHY SITES OR THAT MR. MOBLEY ALLEGEDLY SENT

3   VIDEOS TO ANYONE ELSE ASIDE FROM HIMSELF AND L.U. BASED ON THE

4   ALLEGATIONS.

5       WE WILL POINT OUT TO THE COURT THAT THE PRESUMPTION

6   HAS BEEN REBUTTED.  AND WE SUBMIT TO THE COURT THAT THE COURT

7   CAN FASHION A BOND IN THIS CASE THAT WILL NOT ONLY ASSURE ANY

8   FUTURE APPEARANCES IN COURT BUT AS WELL SAFETY TO THE

9   COMMUNITY.

10       MR. MOBLEY CAN BE PLACED ON AN ELECTRONIC MONITOR

11  WHERE HE WILL HAVE TO REMAIN AT HOME UNDER RESTRICTIONS.  THERE

12  IS NOT A LANDLINE AT THE HOME BUT ONE CAN CERTAINLY BE PLACED

13  AT THE HOME.

14       HIS FATHER HAS AGREED TO RELOCATE HIS WHOLE FAMILY TO

15  OCALA SO THAT HE CAN ACT AS A THIRD PARTY CUSTODIAN.

16       WE BELIEVE THAT THESE CONDITIONS ARE SUFFICIENT AND

17  WILL MONITOR MR. MOBLEY, AND WE WOULD ASK THE COURT TO IMPOSE A

18  $100,000 PERSONAL SURETY BOND, AS WELL AS THE ELECTRONIC

19  MONITOR AND ALLOW BOTH OF HIS PARENTS TO CO-SIGN ON THAT BOND.

20       THANK YOU.

21       THE COURT:  THANK YOU, MA'AM.

22       ALL RIGHT.  MR. MOBLEY, I AM GOING TO DETAIN YOU AS A

23  RISK OF FLIGHT AND A DANGER TO THE COMMUNITY.

24       I'M TAKING INTO CONSIDERATION, AND I CAREFULLY WROTE

25  DOWN ALL OF THE INFORMATION YOUR ATTORNEY HAS PROFFERED

1  CONCERNING YOUR FAMILY'S WILLINGNESS TO CO-SIGN BONDS AND STAND
2  BEHIND YOU IN THIS, AND THAT'S TO YOUR CREDIT AND TO THEIR
3  CREDIT.  BUT I CANNOT DISREGARD THE EVIDENCE AT THIS POINT.
4           THIS IS NOT A GUILT OR INNOCENCE PHASE OF YOUR
5  HEARINGS.  THIS IS SIMPLY A BOND DETENTION TIME.  BUT I MUST
6  WEIGH THE EVIDENCE UNDER THE BAIL REFORM ACT TO DETERMINE
7  WHETHER OR NOT YOU HAVE REBUTTED THE STATUTORY PRESUMPTION THAT
8  CONGRESS PASSED YEARS AGO IN CASES OF THIS TYPE THAT SAY YOU DO
9  NOT GET A BOND.
10          I FIND YOU -- YOU HAVE NOT REBUTTED THAT STATUTORY
11 PRESUMPTION.  SIMPLY BECAUSE YOUR FAMILY IS WILLING TO RELOCATE
12 AND KEEP AN EYE ON YOU, BECAUSE IF THE EVIDENCE IS ESTABLISHED
13 THE WAY IT HAS UNFOLDED DURING THESE HEARINGS AND SET FORTH IN
14 THE COMPLAINT, YOU TOOK ADVANTAGE OF TWO MINOR CHILDREN WHO
15 WERE EITHER IN YOUR -- NOT NECESSARILY YOUR CARE AND CUSTODY
16 BUT YOU WERE IN A POSITION OF TRUST WITH THEM, AND THAT CAN
17 CERTAINLY TAKE PLACE AGAIN.
18          THE FACT THAT SOMEONE WOULD CO-SIGN A BOND OR I EVEN
19 PUT YOU ON ELECTRONIC MONITORING IS NOT GOING TO ALLEVIATE MY
20 FEAR THAT THAT COULD IN FACT OCCUR AGAIN IN THE FUTURE.
21          SO BASED UPON THE TOTALITY OF THE EVIDENCE I WILL
22 ISSUE A DETENTION ORDER DETAINING YOU AS A RISK OF FLIGHT AND A
23 DANGER TO THE COMMUNITY, AND I WILL RECITE IN DETENTION ORDER
24 ALL OF THE FACTS YOUR ATTORNEY HAS PROFFERED IN RESPECT TO YOUR
25 FAMILY'S WILLINGNESS TO STAND BY YOU AND CO-SIGN ANY BONDS.

```
 1              ANYTHING ELSE IN THIS MATTER, MISS BIRCH,
 2  ISS LINEBERGER?
 3              MS. AUGUSTIN-BIRCH:  NO, YOUR HONOR.
 4              MS. LINEBERGER:  NO, YOUR HONOR.  THANK YOU.
 5              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.
 6                            - - -
```

C E R T I F I C A T E

UNITED STATES OF AMERICA

SOUTHERN DISTRICT OF FLORIDA

    I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO HEREBY CERTIFY THAT THE FOREGOING 19 PAGES CONSTITUTE A TRUE TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN THE CITY OF FORT PIERCE, FLORIDA, IN THE MATTER THEREIN STATED.

    IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 14TH DAY OF JUNE 2016.

                                     /S/CARL SCHANZLEH
                                     CARL SCHANZLEH, RPR-CM
                                     CERTIFIED COURT REPORTER
                                     9960 SW 4TH STREET
                                     PLANTATION, FL 33324
                                     TELEPHONE 954 424-6723