UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 15-CR-14059-MARTINEZ

**UNITED STATES OF AMERICA,**

v.

**JEFFREY BRIAN MOBLEY,**

    **Defendant.**
_____/

### GOVERNMENT'S RESPONSE IN OPPOSITION TO JEFFREY MOBLEY'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its response in opposition to defendant Jeffrey Brian Mobley ("the defendant" or "Mobley") Motion to Reduce Sentence (DE 76, 77).

**I.    Procedural History**[1]

On October 15, 2015, a federal grand jury in the Southern District of Florida returned an indictment charging appellant Jeffrey Brian Mobley, a church youth pastor, with four counts of production of visual depictions of the sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e) (Counts 1 – 4); and two counts of distribution of visual depictions of sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Counts 5-6) (DE 9). Mobley pled guilty to the indictment without the benefit of a written plea agreement but signed a stipulation setting forth the facts related to the offense (DE 32). Mobley's sentencing guidelines as per the Presentence Investigation Report (PSI) were a guideline imprisonment range of life, as per a total offense level of 43 and a criminal history category of I (PSI ¶ 130). On August 3, 2016,

---

[1] The Offense Conduct is taken verbatim from the United States' Appellate Brief in Mobley's appeals case (United States v. Mobley, Case No. 16-12969-GG)

1

the district court sentenced Mobley to a term of 540 months of imprisonment (a downward variance), consisting of 360 months for Counts 1 through 4, followed by 180 months for Counts 5 and 6, all followed by a life-time term of supervised release (DE 66).

Mobley, who is incarcerated, timely appealed (DE 53). The Eleventh Circuit then affirmed Mobley's sentence (DE 68).

Mobley filed a 28 U.S.C. § 2255 Motion to Vacate in October 2023, which was dismissed with prejudice for untimeliness (DE 75, 78).

Mobley is serving his sentence at USP Terre Haute, with an anticipated release date of February 7, 2054. He has served approximately 96 months and has credit for good conduct time of approximately 14 months, for total time served of approximately 110 months (about 9 years).

Mobley now files the instant Motion pursuant to 18 U.S.C. § 3582(c)(1)(a) and the new Sentencing Guideline Amendments (DE 76, 77). He claims extraordinary and compelling circumstances warrant his early release due to the COVID-19 pandemic. He also claims the new Sentencing Guideline amendment applies to him under the provision for an unusually long sentence. He also asserts claims of ineffective assistance by his trial counsel[2] and requests the appointment of counsel. As described below, all his claims are meritless and should be dismissed.

II.     **Offense Conduct**[3]

According to the agreed-to facts contained in the parties' signed stipulation, Mobley's victimization of the minor, L.U., was first discovered by the Martin County Sheriff's Department on September 24, 2015, when L.U.'s mother told law enforcement officials her concerns that her

---

[2] Mobley asserts a claim of ineffective assistance of counsel, however, a § 3582 Motion is not the proper vehicle for such a claim. Mobley must make that claim under S 2255 petition. Accordingly, it should be denied.
[3] The Offense Conduct is taken verbatim from the United States' Appellate Brief in Mobley's appeals case (United States v. Mobley, Case No. 16-12969-GG)

15-year-old daughter had been missing from school a few days earlier, and that she had learned that Mobley, a youth pastor, had been picking her daughter up from school, taking her to a hotel, and drinking beer with her (DE32). The mother explained that L.U. had met Mobley in January 2014, at a church youth program, when L.U. was 14. A Martin County Sheriff's Office detective interviewed L.U. who admitted that she had had sexual intercourse with Mobley on several occasions at Mobley's residence and at a local hotel (id.). Surveillance camera footage from the hotel confirmed that on September 17, 2015, Mobley and the minor had walked through the hotel lobby and entered a hotel room Mobley had reserved (id.). Hotel business USCA11 Case: 16-12969 Date Filed: 03/06/2017 Page: 13 of 48 3 records confirmed that Mobley had checked into the hotel on previous occasions in 2015 (id). Martin County detectives examined L.U.'s cellular telephones and recovered two videos showing sexually explicit activity between her and Mobley (id.). According to L.U., Mobley had made a video of them using his iPhone while they were engaging in sexual intercourse when she was 15 (id.). She further admitted that Mobley had made many videos of their sexual encounters on numerous occasions and would often send her the videos by e-mail through a Gmail account (id.). She further admitted that she and Mobley had communicated by Twitter, an online social networking service that enables registered users to send and read short 140-character messages called "tweets" (id.). She gave the detectives permission to access her Twitter account and detectives found "hundreds" of "tweets" between Mobley and L.U., many containing sexually explicit messages between Mobley and L.U. in which Mobley told L.U. to take pictures of herself in the nude engaging in sexual activity and send them to him (id.). Mobley had sent a picture of his erect penis to her (id.). On September 30, 2015, detectives executed a federal search warrant on Mobley's Twitter account and found numerous sexually explicit photographs of Mobley and L.U. and Mobley's messages to her (id.). The detectives

3

confirmed USCA11 Case: 16-12969 Date Filed: 03/06/2017 Page: 14 of 48 4 that the account was associated with Mobley's IP addresses (id.). A forensic examination of Mobley's iPhone also revealed videos produced on August 4, 2015, and September 18, 2015, of Mobley and L.U. engaging in sexual intercourse in Mobley's residence and in his truck (id.). Detectives also found e-mails sent from Mobley's Hotmail account containing sexually explicit videos and photographs of L.U., including a February 13, 2015, e-mail of a video them having sexual intercourse and a July 5, 2015, e-mail of still photographs of a Skype session in which L.U. posed nude in the shower (*id*.). The March 10, 2016, stipulation noted that L.U. had turned 16 by the time the stipulation was drafted (*id*.).

### III. LEGAL STANDARD AND ANALYSIS

#### a. Mobley Has Not Presented Extraordinary And Compelling Reasons Based On Medical Conditions And COVID-19[4]

Mobley claims the COVID-19 pandemic continues to be a "public health disaster" particularly for incarcerated persons (DE 76:3). However, earlier this year, the World Health Organization declared the "emergency phase" of the pandemic "over." WHO downgrades COVID pandemic, says it's no longer emergency, AP News, https://apnews.com/article/who-declares-covid-emergency-over-pandemic-8b6445735df5218b5d9d6ec32fa047ca. And in May 2023, the federal COVID-19 Public Health Emergency declaration ended. End of Public Health Emergency, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. So, while COVID-19 remains a dangerous illness that has caused many deaths in the United States and that has resulted in massive disruption to our society and economy, it no longer poses the same threat it once did. Nevertheless, the BOP continues to take measures

---

4  The government concedes that Mobley has exhausted his administrative remedies, according to Bureau of Prison records.

4

to protect the health of the inmates in its charge, including facilitating vaccination for its inmate population and staff.[5]

Mobley has not presented any "extraordinary and compelling" reason that justifies relief. Since he is fully vaccinated against COVID-19, and was previously infected, Mobley has not presented "extraordinary and compelling" reasons as it relates to the virus.

According to his medical records,[6] Mobley has received his first and second doses of the Jannsen COVID-19 vaccine. He was also administered a booster shot of the Pfizer COVID-19 vaccine. He was even previously infected with COVID-19 and recovered. Having been fully vaccinated, Mobley is now highly protected against a severe outcome due to the virus. *See United States v. Gillon*, No. 3:09-CR-209-MMH-MCR, 2022 WL 2066106, at *4–5 (M.D. Fla. June 8, 2022) ("According to the available data, the COVID-19 vaccines are effective at preventing death or serious illness from COVID-19, including against emerging variants. Recent data also suggests that 'hybrid immunity' – a combination of natural immunity following recovery from a COVID-19 infection plus immunity from a vaccine – provides especially robust protection."); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still

---

[5] As of November 28, 2023, Terre Haute USP, Mobley's facility of incarceration, is operating normally based on the current risk to COVID-19 (Level 1). *See* https://www.bop.gov/locations/institutions/thp/.

[6] Given the sensitivity of the documents, the government is submitting a motion seeking authorization to file the medical records under seal.

5

may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Wakefield*, 2021 WL 640690, at *2–3 (W.D.N.C. Feb. 18, 2021) (defendant presents obesity, diabetes, and hypertension, but he previously tested positive, and has received the first dose; "Because he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."). Given that Mobley has been fully vaccinated, and was even previously infected, he cannot now present an "extraordinary and compelling" reason as it relates to the virus and medical conditions.

Notwithstanding COVID-19, Mobley also does not suffer from medical conditions that independently meet the "extraordinary and compelling" reasons threshold. He asserts he suffers from some mental health struggles; however, those cannot be exacerbated by any supposed risk of COVID-19. They also do not rise to the level of extraordinary and compelling, as they do not greatly impact his activities of daily living, are considered terminal, or have caused him serious deterioration. For the forgoing reasons, Mobley has not presented "extraordinary and compelling" reasons in support of his request for early release.

### b. The Sentencing Commission and the new amendments to the Sentencing Guidelines

Mobley then argues he is also entitled to a reduction in sentence due to the new amendments to the Sentencing Guidelines, specifically the provision related to unusually long sentences. On April 5, 2023, the Sentencing Commission promulgated amendments to the Guidelines Manual, including to Section 1B1.13's policy statement. The amendments to Section

1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments allow the court to consider the length of a sentence when determining whether a defendant has presented an extraordinary and compelling reason for compassionate release. That change is reflected in new subsections (b)(6) and (c), which provide:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* U.S.S.G. § 1B1.13(b)(6), (c).

In Section 3582(c)(1)(A)(i), Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but Congress's clear directive that any such reasons be both *extraordinary* and *compelling* necessarily limit the Commission's authority. Nonretroactive changes in sentencing law are neither. To the contrary, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United*

*States*, 567 U.S. 260, 280 (2012). To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, an intervening change in the law is neither, and under controlling case law may not be considered in this circuit. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law.

**D.     The Sentencing Commission exceeded its Congressionally delegated authority in promulgating subsection (b)(6)**

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide

8

that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added). The Sentencing Commission is without the authority to promulgate subsection (b)(6), which makes this section invalid.

### E. Subsection (b)(6) Conflicts With Section 3582(c)(1)(A)'s Plain Text, Context, And Purpose

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid. *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

Although the Eleventh Circuit has not yet addressed the question, nearly every other circuit has held that a claimed error in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction, and that a defendant cannot resort to Section 3582(c)(1)(A)(i) to circumvent the normal process of direct and collateral review. *See, e.g.*, *United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022); *United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021); *United States v. Ferguson*, 55 F.4th 262, 270-272 (4th Cir. 2022); *United States*

9

*v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023); *United States v. West*, 70 F.4th 341, 346-347 (6th Cir. 2023); *United States v. Martin*, 21 F.4th 944, 945-946 (7th Cir. 2021) (per curiam); *Crandall*, 25 F.4th at 586; *United States v. Wesley*, 60 F.4th 1277, 1283-1286 (10th Cir. 2023); *Jenkins v. United States*, 50 F.4th 1185,1200-1204 (D.C. Cir. 2022); *see also United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023) (noting issue, but explaining that the defendant there "does not claim that his original sentence violated the Constitution or federal law"). Only the First Circuit has held differently. *See United States v. Trenkler*, 47 F.4th 42, 47-49 (1st Cir. 2022).

In short, "the Commission could not describe 'extraordinary and compelling reasons' to include consideration of a factor that, as a statutory matter, may not constitute such a reason." Dept. Br. in Opp. 22, *Gashe v. United States*, 142 S. Ct. 753 (2022) (No. 20-8284). The Commission may not adopt a reading of the phrase "extraordinary and compelling" that is unreasonable or foreclosed by the statutory text, structure, history, and purpose. *Mayo Found*, 562 U.S. at 53-58. The Sentencing Commission in particular "was not granted unbounded discretion"; "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (holding that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards"). Thus, the Sentencing Commission's determination to permit intervening changes in law to establish extraordinary and compelling reasons for a sentence reduction exceeds the bounds of its delegated authority and is therefore invalid. *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invaliding Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

10

Potential disparities between a defendant's sentence and the sentence he might receive today based on an intervening judicial decision reflect the operation of ordinary nonretroactivity principles. *See Dorsey*, 567 U.S. at 280 (explaining that when Congress elects to make a statutory change nonretroactive, it simply adheres to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced."). Moreover, treating a change in law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. Such a reading of the statute also would undermine one of the Sentencing Reform Act's primary purposes: to eliminate unwarranted sentencing disparities.

**F. Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law**

Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under Section 3582(c)(1)(A)(i) also would undermine a primary purpose of the Sentencing Reform Act, in which that provision was enacted. Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290-91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of

11

sentence." *Tapia v. United States*, 564 U.S. 319,325 (2011). Thus, considering changes in the law as a basis for extraordinary and compelling relief is in conflict with the Sentencing Reform Act and the interest in achieving more uniformed and just sentences.

**G. Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under Section 3582(c)(1)(A)(i) also would undermine a primary purpose of the Sentencing Reform Act, in which that provision was enacted**

Consistent with Congress's goal of determinate sentencing, Section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to Section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively

produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing.

### H. Finally, the Commission's interpretation of Section 3582(c)(1)(A) as empowering district courts to apply nonretroactive changes in law to particular defendants is in serious tension with basic separation-of-powers principles

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission

13

has elected to make retroactive. *See* U.S.S.G. § 1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

Accordingly, the government urges the Court to adopt the majority position—that a change in the law cannot constitute extraordinary and compelling reason for release—and find the provision invalid.

**I. Regardless, Under The Circumstances Of This Case, Defendant Cannot Establish That Changes In Law Produce A Grossly Disparate Sentence**

Even if subsection (b)(6) represented a valid exercise of the Commission's delegated authority, Defendant cannot establish extraordinary or compelling reasons for a sentence reduction under that provision. Firstly, he has only served 8 years of his sentence, and the text of the provision requires that the defendant has served at least 10 years. As such, Mobley does not qualify for relief on the face of the amendment.

Additionally, he cannot demonstrate that this change would result in a grossly disproportionate sentence because he already received a downward variance from his sentencing guidelines, which was life imprisonment, or specifically, 1,920 months. His offense level under

14

the Sentencing Guidelines was calculated at a level 43. Due to his charges, he would remain at a level 43, and under either scenario, his guideline range would remain a life sentence. The criminal history category does not impact the guideline range at an offense level of 43, making this a non-issue.

### J. The Remaining Reasons Offered By Defendant Are Not Extraordinary And Compelling

As to his claim that his rehabilitation efforts qualify him to receive compassionate release, Mobley does not meet his extraordinary and compelling reasons burden for release. District courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with § 1B1.13. *See Bryant,* 996 F.3d at 1262 ("[W]e hold that [§] 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A). Accordingly, district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with [§] 1B1.13."); *see also United States v. Saldana,* 2022 WL 17819520 (11th Cir. Dec. 20, 2022). Moreover, as discussed below, the Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13.

Here, Mobley fails to meet his burden for compassionate release. Rehabilitation and good conduct are what are expected of inmates; they do not qualify for extraordinary and compelling relief that the Court can consider. See *Bryant,* 996 F.3d at 1262.

### K. Mobley Poses a Significant Danger to the Safety of the Community and the § 3553(a) Factors Strongly Weigh Against His Release.

Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community, or otherwise merits release under the § 3553(a) factors. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Under the applicable policy statement, this Court must deny a sentence reduction

unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). The Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton,* 715 F.3d 328, 337 (11th Cir. 2013) (in the context of a motion to reduce under § 3582(c)(2)); *United States v. Lonergan*, No. 19-60131-CR, 2022 WL 426487 at *5 (S.D. Fla. Feb. 11, 2022).

As to Mobley, the severity of his underlying conduct highlight his danger to the community, a burden of proof he cannot overcome. The mandatory minimums for this level of heinous abuse of children are high for a reason. If this Court grants early release, it will result in a sentence that does not reflect the seriousness of his underlying offenses, promote respect for the law, provide just punishment, and provide general deterrence to criminal conduct. *See United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (stating that "compassionate release is discretionary, not mandatory, and c[an] be refused after weighing the sentencing factors of 18 U.S.C. [section] 3553(a)"); *see also United States v. Cook*, 998 F.3d 1180, 1185 (11th Cir. 2021) (citing *United States v. Douglas*, 576 F.3d 1216, 1220 (11th Cir. 2009) (quotations omitted) ("…when considering a motion under § 3582(c)(1)(A)(i), [the district court] must ensure that the record reflects that it considered the [applicable] § 3553(a) factors."). While it is true that Mobley received a lengthy sentence, his sexual abuse of multiple minor victims, and the abuse of his position of moral authority as a youth pastor who his victims and their families trusted, and his inability to articulate any reason for which those realities should be overcome, weigh heavily against his release. And while he has demonstrated positives during his time incarcerated, they do not change that he remains a danger to the community.

### L. Mobley is Not Entitled to Appointment of Counsel.

A defendant has no Sixth Amendment right to counsel in connection with a Section 3582(c) motion. Courts have uniformly held that defendants do not have a Sixth Amendment right to counsel in connection with a § 3582(c) motion. *See United States v. Almaraz*, 2022 WL 1567124 (S.D. Fla. May 18, 2022) (citing *Webb*, 565 F. 3d at 794-95 (11th Cir. 2009)) (explaining that Circuit Courts have unanimously held that defendants have no constitutional or statutory right to counsel with respect to a motion to reduce a sentence). Instead, the district court has the discretionary authority to appoint counsel in the interests of justice. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").

Notably, a defendant does not have a right to a hearing for a § 3582 motion, which further bolsters the conclusion that there is no right to counsel for such a proceeding. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States*, 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

Here, Mobley establishes no unique facts or circumstances that would warrant appointment of counsel. *See, e.g., United States v. Whitebird*, 55 F.3d 1007, 1010 (5th Cir. 1995) (defendant has no statutory right to counsel in connection with a § 3582(c) motion because such a motion is not an "ancillary matter" under § 3006A). A motion for compassionate release presents a circumstance unique to each defendant and may be presented at any time as the years pass. It is

17

inappropriate in these circumstances to create an entirely new basis for the appointment of counsel in post-conviction litigation, outside the requirements of the Constitution and statutory authority.

Accordingly, this Court should deny Mobley's request for appointment of counsel.

## IV.   CONCLUSION

WHEREFORE, the United States respectfully requests that this Court DENY Defendant's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for the reasons set forth above.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: *s/ Carolina Perez Schmerold*
Assistant United States Attorney
U.S. Attorney's Office
99 NE 4th St., Miami, Florida 33130
Email: Carolina.perez@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and mailed it to pro se defendant Jeffrey Mobley, Reg. No. 63344-018, USP Terre Haute, U.S. Penitentiary, P.O. Box 33, Terre Haute, IN 47808.

Respectfully submitted,

By:   *s/ Carolina Perez Schmerold*
       Carolina Perez Schmerold
       Assistant United States Attorney